## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MAINE

In re:

**ARTSTOCK d/b/a
Artist & Craftsman Supply,**

**Debtor.**[1]

**Chapter 11**

**Case No.** __25-20305__

---

### MOTION OF DEBTOR FOR: (I) ENTRY OF AN ORDER ON INTERIM AND THEN FINAL BASIS: (A) AUTHORIZING THE USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; AND (C) GRANTING RELATED RELIEF; AND (II) GRANTING EMERGENCY DETERMINATION AND LIMITING NOTICE <u>ON AN INTERIM BASIS</u>

### REQUEST FOR EMERGENCY DETERMINATION AS TO INTERIM RELIEF

**This motion includes a request for an emergency determination pursuant to Local Rule 9013-4 as to the request for interim relief only, with a requested hearing on <u>December 23, 2025</u>. A statement of the facts and circumstances justifying emergency determination, as required by Local Rule 9013-4, is included herein.**

Artstock d/b/a Artist & Craftsman Supply ("**Artstock**"), the above-captioned debtor and debtor-in-possession (the "**Debtor**"), moves this Court (the "**Motion**"), pursuant to § 363(c)(2)(B) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2, 9013-1, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), for entry of an order, on an interim (the "**Interim Order**") and then final basis (the "**Final Order**") after adequate notice and a final hearing: (i) authorizing the Debtor to use cash collateral, as defined in § 363(a) of the Bankruptcy Code (the "**Cash Collateral**"); (ii)

---

[1] The last four digits of Artstock's federal taxpayer identification number are 6772, and its principal place of business is 540 Deering Avenue, Portland, Maine.

providing adequate protection to the Prepetition Lienholders (defined below) on the terms set forth

in the Interim Order (to the extent required); and (iii) scheduling related deadlines and granting

related relief.  In support of this Motion, the Debtor states as follows:

## JURISDICTION, VENUE, AND APPLICABLE PROVISIONS

1.      The United States District Court for the District of Maine (the "**District Court**")

has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C.

§ 1334(b).  By the District Court's standing order of reference, this matter was referred to this

Court pursuant to 28 U.S.C. § 157.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has

constitutional authority to enter final judgment in this proceeding.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this

proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4.      The statutory predicates for the relief sought herein are § 363(c)(2)(B) of the

Bankruptcy Code, Rule 4001(b) of the Bankruptcy Rules, and Local Rules 2002-1, 4001-2, 9013-

1 and 9013-4.

## DISCLOSURES AND RELATED INFORMATION

5.      Pursuant to the applicable Bankruptcy Rules and Local Rules, the Debtor makes

the following disclosures regarding the relief sought in this Motion:

| Requirement | Disclosure |
|---|---|
| Name of each entity that may assert a potential interest in Cash Collateral | Cambridge Savings Bank and the Small Business Administration (the "**SBA**" and, with Cambridge Savings Bank, the "**Prepetition Lienholders**") may assert an interest in the Cash Collateral of the Debtor. |
| Purpose for use of Cash Collateral | Use of Cash Collateral is necessary to avoid harm to the Debtor and its estate because, without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain its assets, to operate its business in the ordinary |

| | course, to provide financial information, to pay professionals, and to pay other expenses necessary to maximize the value of the Debtor's estate in chapter 11. |
|---|---|
| Modification of Automatic Stay | The Interim Order does not contain any modification of the automatic stay. |
| Material terms, including duration of the use of Cash Collateral | The Debtor shall be authorized to use Cash Collateral in accordance with the budget attached to the proposed Interim Order as **Exhibit A** and subsequent budgets to be filed at later dates in the chapter 11 case (the "**Budget**").    The Debtor's use of Cash Collateral shall be conditioned upon the Debtor's compliance with the Budget, with the understanding that the timing of revenue and expenses may vary from projections, except that the Debtor's aggregate disbursements shall be limited to 125 percent (125%) of projected aggregate disbursements in the Budget. |
| Liens, cash payments, or other adequate protection to be provided to each entity with an interest in Cash Collateral | To the extent the Prepetition Lienholders are entitled to adequate protection for the Debtor's use of Cash Collateral, and solely to the extent of any diminution in the value of such interest in Cash Collateral from and after the Petition Date as to the Debtor (if any), the Prepetition Lienholders shall be provided with the following adequate protection: <br><br> (i) Through an increase in Cash Collateral from the Petition Date during the relevant time period and the use of Cash Collateral to maintain and preserve their secured interests; <br><br> (ii) Through the Adequate Protection Liens and Continuing Liens (each as defined below); and <br><br> (iii) To the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations (defined below) in their entirety, the remaining, unsatisfied Adequate Protection Obligations shall constitute allowed administrative claims against the Debtor to the extent provided by § 507(b) of the Bankruptcy Code. |
| Proposed budget | The initial Budget is attached to the proposed Interim Order as **Exhibit A**. |
| Estimated claim amounts for the parties with potential interest in Cash Collateral | Cambridge Savings Bank: **$1,500,000.00** (approximately) <br> SBA: **$1,900,000.00** (approximately) |

## BACKGROUND

6.      The Debtor was founded in 1985 as a small art supply store in Portland, Maine focused primarily on fine art materials and serving local artists.  Starting in the mid-1990s, the Debtor began expanding its retail footprint beyond its original store and the company expanded into areas beyond traditional fine art, including children's art supplies, school materials, novelty items, and eclectic goods.

7.      Over time, the Debtor grew into one of the largest independent art material retail chains in the United States with dozens of brick-and-mortar locations across multiple states and a strong online presence.   Unfortunately, recent economic headwinds and unyielding lending restrictions have put a severe a strain on the Debtor's finances, necessitating this filing.

8.      Accordingly, on December 21, 2025 (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

9.      The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession.  To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

### SUMMARY OF POTENTIAL INTERESTS IN CASH COLLATERAL[2]

10.      Based on its review of its records and financing statements filed with the Maine Secretary of State, the Debtor believes that the following parties may assert an interest in Cash Collateral as of the Petition Date:

11.      **Cambridge Savings Bank**.   On or around October 7, 2022, the Debtor and

---

[2] The summary herein is intended to provide sufficient information for this Court to grant the relief sought in this Motion.  This summary is qualified in its entirety by the relevant agreements and other documentation relating to the Prepetition Lienholders.  Nothing herein or in the Interim Order shall expand in any way the scope, validity, perfection, or extent of any liens as may have existed on the Petition Date.

Cambridge Savings Bank entered into an agreement wherein Cambridge Savings Bank agreed to lend to the Debtor the principal sum of up to **$4,000,000.00** under a revolving line of credit facility. To secure the obligations owed by the Debtor to Cambridge Savings Bank, the Debtor granted Cambridge Savings Bank, among other interests and collateral, a lien on all now existing and hereafter acquired assets and properties of Debtor, together with all proceeds and products of the foregoing. To perfect its interests, Cambridge Savings Bank filed a UCC Financing Statement on October 7, 2022.

12. **SBA**. On or around May 19, 2020, the Debtor and the SBA entered into an agreement wherein the SBA agreed to lend to the Debtor the principal sum of **$2,000,000.00**. To secure the obligations owed by the Debtor to the SBA, the Debtor granted the SBA, among other interests and collateral, a lien on all tangible and intangible personal property of the Debtor, as well as all proceeds thereof. To perfect its interests, the SBA filed a UCC Financing Statement on June 1, 2020, and a continuation filing on May 23, 2025. The SBA has subordinated its interests to those of Cambridge Savings Bank.

## THE DEBTOR'S NEED FOR THE USE OF CASH COLLATERAL

13. The Debtor seeks interim authority to use Cash Collateral to fund necessary expenses in the early weeks of the case, including payroll, supplies and inventory, utilities, and other ordinary operating expenses as set forth in the Budget. Access to the use of Cash Collateral both short- and long-term is necessary for the Debtor to fund required expenses during the chapter 11 case, as described in the Budget, which the Debtor believes will preserve and maximize the going-concern value of the estate for the benefit of all parties. Other than Cash Collateral, the Debtor does not have access to funds and would be unable to pay these necessary expenses. Accordingly, access to and use of Cash Collateral will provide the Debtor with the liquidity necessary to ensure that the Debtor has sufficient working capital and can meet its obligations as

a debtor-in-possession in the case.

14.     The inability to use Cash Collateral, on the other hand, would mean that the Debtor's business operations would have to cease, be subject to liquidation in bankruptcy or a state court proceedings, or the business would need to be placed into a receivership under applicable state law.  Any of these outcomes would cause substantial harm to the Debtor and limit potential recoveries to creditors.  This would cause irreparable harm, not only to the Prepetition Lienholders, but also to the value of the Debtor's business, including as a going concern.

## RELIEF REQUESTED

15.     The Debtor requests entry of the Interim Order and then the Final Order: (i) authorizing the Debtor to use Cash Collateral; (ii) granting the Prepetition Lienholders adequate protection upon the terms set forth herein; and (iii) granting related relief and setting certain deadlines.

## BASIS FOR RELIEF

16.     Section 541(a) provides that the "commencement of a case . . . creates an estate" that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a).  Section 362(a) provides that "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

17.     Section 363(a) of the Bankruptcy Code provides the following definition of cash collateral:

> . . . cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents,

6

or profits of property and the fees, charges, accounts or other payments for the use
or occupancy of rooms and other public facilities in hotels, motels, or other lodging
properties subject to a security interest as provided in section 552(b) of this title,
whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

18.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may use cash

collateral as long as: (a) each entity that has an interest in such cash collateral consents; or (b) the

bankruptcy court, after notice and a hearing, authorizes such use, sale, or lease in accordance with

the provisions of the section.  See 11 U.S.C. § 363(c)(2).  Section 363(e) provides, in turn, that "on

request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the

trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as

is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

19.     The concept of adequate protection is designed to shield a secured creditor from

diminution in the value of its interest in collateral during the period of a debtor's use after

commencement of the bankruptcy case.  See In re Carbone Cos., 395 B.R. 631, 635 (Bankr. N.D.

Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or

decrease as a result of the proposed use of cash collateral); In re Cont'l Airlines, Inc., 154 B.R.

176, 180-81 (Bankr. D. Del. 1993) (adequate protection for use of collateral under § 363 is limited

to use-based decline in value).

20.     Section 362(d)(1) of the Bankruptcy Code provides for adequate protection in

property due to the imposition of the automatic stay.  See 11 U.S.C. § 362(d)(1).  Although § 361

provides examples of forms of adequate protection, such as granting replacement liens and

administrative claims, courts must decide what constitutes sufficient adequate protection on a case-

by-case basis.  See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev.

Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate

protection is made on a case by case basis."); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y.

1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries

of each case . . . .") (citation and quotation omitted).

**A.     Cash Collateral Increases Over the Relevant Cash Collateral Period.**

21.     Section 361 of the Bankruptcy Code provides a non-exhaustive list of the ways

adequate protection can be provided.  However, a creditor is adequately protected, and no further

adequate protection is required, in the event that Cash Collateral increases over the course of the

chapter 11 proceedings, even in circumstances where the levels of cash collateral decrease for

interim periods during the case.  See In re Dynaco Corp., 162 B.R. 389, 394 (Bankr. D. N.H. 1993).

22.     Here, the Debtor seeks authority to use Cash Collateral on an interim and then final

basis, and as reflected in the Budget, at least during the interim period, the aggregate ending

balance of Cash Collateral equals or exceeds the beginning balance on the Petition Date.  The

Debtor's proposed use of Cash Collateral will preserve the value of Cash Collateral during the

interim period (at the very least) and avoid immediate and irreparable harm to the Debtor and its

estate.  In light of this, to the extent the Prepetition Lienholders hold valid, perfected, and

unavoidable interests in Cash Collateral of the Debtor, the Prepetition Lienholders' interests are

being adequately protected without providing any additional form of relief during the interim

period.

23.     Beyond the interim period, the Prepetition Lienholders' security will be further

adequately protected by improvements in the nature of collateral premised on inventory being

converted to cash, as well as by the general over-secured nature of the Prepetition Lienholders'

claims.

**B.     Adequate Protection Obligations, Additional Liens, and Super-Priority Claims.**

24.     As further adequate protection for the Debtor's use of Cash Collateral, the

8

Prepetition Lienholders shall be granted, solely to the extent of any diminution in the value of the Prepetition Lienholders' interests in Cash Collateral of the Debtor from and after the Petition Date (such diminution in value after the Petition Date for their interests, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of any avoidance actions), which shall exist in the same order of priority that existed as of the Petition Date with the Prepetition Lienholders (the "**Adequate Protection Liens**").  Relatedly, the Prepetition Lenders are adequately protected by an equity cushion in the collateral, as the value of the inventory alone securing the obligations owed to the Prepetition Lenders exceeds the amounts owed to the Prepetition Lenders (as reflected in the Budget).

25.     In addition to the Adequate Protection Liens, pursuant to and solely to the extent set forth in § 552 of the Bankruptcy Code, the Prepetition Lienholders shall continue to hold liens, rights as assignee, and/or security interests in any and all property of the Debtor to the same extent and validity, and in the same priority, as the Prepetition Lienholders held liens, rights as assignee, and/or security interests in the Debtor's assets at the Petition Date (the "**Continuing Liens**"). Those Continuing Liens already render the Prepetition Lienholders over-secured and therefore adequately protected.

26.     The Adequate Protection Liens and Continuing Liens shall be valid, binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, financing statements, or other agreements.

27.     Finally, as further adequate protection, to the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations in their entirety, the remaining, unsatisfied Adequate Protection Obligations due to the Prepetition Lienholders shall constitute allowed administrative claims against the Debtor to the extent

provided by § 507(b) of the Bankruptcy Code.

## REQUEST FOR EMERGENCY RELIEF AND LIMITED NOTICE

28.     The Debtor believes that all or substantially all of its available cash on the Petition

Date constitutes Cash Collateral.  Access to the use of Cash Collateral is necessary for the Debtor

to fund expenses required for the Debtor to maintain operations, as well as for the Debtor to fund

other necessary expenses in chapter 11, such as utilities, payroll, and other operating costs as

reflected in the Budget, which the Debtor believes will preserve and maximize the value of the

estate.  Further, the Debtor incurs these expenses on a frequent, sometimes unpredictable basis,

and, therefore, emergency relief is necessary so the Debtor may have authority to use Cash

Collateral to fund these necessary expenses in the ordinary course.

29.     Based on a review of the Budget and the timing of anticipated expenses, including

regular payroll obligations that are funded by the Debtor on Friday of every week (including on

December 26, with payroll drawn by the payroll company on December 24) and other expenses as

set forth in the Budget (as well as the upcoming holiday period, which is both a very busy time of

year for the Debtor and allows for more limited days than usual on which the Court may be

available to hold a hearing), the Debtor requests an emergency interim hearing on this Motion on

**December 23, 2025** (the "**Interim Hearing**").  A hearing on December 23 also will ensure that

the Debtor has authority to use Cash Collateral (in accordance with the Budget) through the busy

Christmas and New Years period, to fund payroll each week, and to assure consumers, vendors,

and employees that the Debtor will continue its operations, honor customer programs, pay its

postpetition business debts (subject to the Budget) to avoid immediate and irreparable harm, and

otherwise be "open for business" in these early, but critical, days of this case.

30.     The Debtor, therefore, also requests limited notice and proposes serving notice of

this Motion and the Interim Hearing thereon on the following parties: (a) the United States Trustee;

(b) the Debtor's secured creditors or, if applicable, to counsel representing them; (c) the top twenty

(20) non-insider unsecured creditors of the Debtor or, if applicable, to counsel representing them;

(d) applicable federal and state taxing authorities; and (e) any party that has requested notice

pursuant to Bankruptcy Rule 2002.  The Debtor will serve notice via email or facsimile when

known.

## REQUEST FOR FINAL HEARING AND RELATED DEADLINES

31.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that this Court set a

date for a final hearing on the Motion and fix related deadlines before the final hearing, as set forth

in the Interim Order.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND
## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

32.     Certain aspects of the relief requested in the Motion may, if granted, be subject to

Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant relief within 21 days

after the filing of the petition if it is necessary to avoid immediate and irreparable harm.  The

Debtor submits that the facts set forth herein demonstrate that the relief requested is necessary to

avoid immediate and irreparable harm to the Debtor, and, thus, Bankruptcy Rule 6003 has been

satisfied.  Additionally, to the extent that any aspect of the relief sought herein constitutes a use of

property under § 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the 14-day stay

under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtor seeks in this Motion

is immediately necessary for the Debtor to be able to continue to operate its business and preserve

the value of the estate.  Accordingly, the Debtor submits that a waiver of the 14-day stay imposed

by Bankruptcy Rule 6004(h) is appropriate.

## **RESERVATION OF RIGHTS**

33.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtor or the existence of any lien against the Debtor's property; (b) a waiver of the Debtor's rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code; or (f) a limitation on the Debtor's rights under § 365 of the Bankruptcy Code to assume or reject any executory contract with any party.  Nothing contained in the Interim Order will be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid, except to the extent otherwise ordered.

34.     The Debtor reserves the right to offer evidence at the Interim Hearing (or such other time as this Court may permit) in support of the relief sought in the Motion.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and then the Final Order, granting the relief requested in the Motion and such other and further relief as this Court deems fair and appropriate.

*[intentionally left blank]*

Dated:    December 21, 2025

Respectfully submitted,

**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ D. Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

Proposed counsel to the Debtor and Debtor in Possession