UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

ARTSTOCK d/b/a
Artist & Craftsman Supply,

Debtor.[1]

Chapter 11

Case No. 25-20305

**INTERIM ORDER: (A) AUTHORIZING THE USE OF CASH COLLATERAL;
(B) GRANTING ADEQUATE PROTECTION; AND
(C) GRANTING RELATED RELIEF**

This matter is before this Court on the *Motion of Debtor for Entry of an Order: (A) Authorizing the Use of Cash Collateral; (B) Granting Adequate Protection; and (C) Granting Related Relief* [Dkt. No. 3] (as supplemented by Dkt. No. [26], the "**Motion**") filed by the Debtor;[2] and due and sufficient notice under the circumstances of the Motion and the hearing on the Motion having been provided by the Debtor; and upon consideration of the Motion, and the record at the hearing; and it appearing that approval of this Order (the "**Interim Order**") is fair and reasonable and in the best interests of the Debtor, the estate, and parties in interest, and is essential for the continued preservation of the Debtor's assets and to avoid immediately and irreparable harm to the Debtor and its estate; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND**:

A.     On the Petition Date, the Debtor commenced its chapter 11 case in the Bankruptcy Court.

---

[1] The last four digits of Artstock's federal taxpayer identification number are 6772, and its principal place of business is 540 Deering Avenue, Portland, Maine.
[2] Capitalized terms used, but not defined in this Order, shall have the meaning ascribed to such terms in the Motion.

1

B.  The Debtor is continuing to manage its assets and operate its business as a debtor-in-possession.

C.  No request for the appointment of an operating trustee or examiner has been made in this case.

D.  The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.  The Debtor has an immediate need to use Cash Collateral to have adequate liquidity to provide for, among other things, the orderly continuation of its business, to maintain business relationships, and to preserve the value of the Debtor's assets.

F.  The relief in this Interim Order is necessary to avoid immediately and irreparable harm to the Debtor and its estate.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**:

1.  The Motion is **GRANTED** on an interim basis as set forth in this Interim Order.

2.  The Debtor is authorized to use Cash Collateral in accordance with and to the extent set forth in the Budget attached hereto as **Exhibit A**, with recognition and allowance that the timing of revenue and expenses may be different than as projected in the Budget.  The Debtor's use of Cash Collateral pursuant to this Interim Order shall be limited to 115 percent (115%) of the aggregate expenditures as set forth in the Budget.  As reflected in the Budget, during the interim period covered by this Interim Order, the Debtor shall make monthly payments to Cambridge Savings Bank ("**Cambridge**") in the amount of monthly interest at the non-default interest rate under the Cambridge loan documents and a $1,000 collateral monitoring fee.

2

3. Not later than 5:00 p.m. (Eastern time) on the Friday of each week commencing on December 31, 2025, the Debtor shall furnish to counsel to Cambridge, and counsel to a committee, if any, a weekly report (the "**Budget Compliance Report**") that sets forth as to the prior week in the Budget, for the prior week and on a cumulative basis since the Petition Date, the actual results for the line items in the Budget. The Budget Compliance Report shall include a report on the Debtor's inventory levels in the applicable reporting week.

4. To the extent the Prepetition Lienholders[3] are determined to be entitled to adequate protection for the Debtor's use of Cash Collateral, as adequate protection for the Debtor's use of Cash Collateral, and pursuant to Bankruptcy Code §§ 361, 363(c)(2), and 363(e), the Prepetition Lienholders shall be granted, solely to the extent of any diminution in the value of the Prepetition Lienholders' interests in Cash Collateral of the Debtor from and after the Petition Date (such diminution in value after the Petition Date, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of any avoidance actions), which shall exist in the same order of priority that existed as of the Petition Date with the Prepetition Lienholders (the "**Adequate Protection Liens**"). In addition to the Adequate Protection Liens, pursuant to and solely to the extent set forth in § 552 of the Bankruptcy Code, the Prepetition Lienholders shall continue to hold liens, rights as assignee, and/or security interests in any and all property of the Debtor to the same extent and validity, and in the same priority, as the Prepetition Lienholders held liens, rights as assignee, and/or security interests in the Debtor's assets at the Petition Date (the "**Continuing Liens**").

5. The Adequate Protection Liens and Continuing Liens shall be valid,

---

[3] As used herein, "Prepetition Lienholders" shall also include the Internal Revenue Service and Blick Art Materials, with the Debtor reserving all rights regarding such claims and interests (including, without limitation, as to validity, priority, and perfection of liens), and including as to whether such parties are entitled to adequate protection.

binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, financing statements, or other agreements.

       6.       To the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations in their entirety, the remaining, unsatisfied Adequate Protection Obligations shall constitute allowed administrative claims against the Debtor to the extent provided by § 507(b) of the Bankruptcy Code.

       7.       The terms and conditions of this Order shall be effective and immediately enforceable upon its entry on the docket notwithstanding any potential application of Bankruptcy Rules 6004, 7062, 9014, or otherwise.

       8.       Immediately upon written notice sent by email from Cambridge to counsel to the Debtor, the U.S. Trustee, and counsel to a committee, if any, the Debtor's authorization, and the consent of Cambridge for the Debtor to use Cash Collateral pursuant to this Interim Order, shall terminate upon the earliest to occur of the following (the date of such written notice, the "**Termination Date**"):

    (a)    the entry of an order of this Court terminating the right of the Debtor to use Cash Collateral;

    (b)    an order of this Court is entered reversing, staying, vacating or otherwise modifying this Interim Order or any provision contained herein without the prior written consent of Cambridge;

    (c)    the Debtor spends in contravention of the Budget, after accounting for allowable variances, without, in each instance, the prior written consent of Cambridge;

    (d)    the dismissal of the chapter 11 case, or the conversion of the chapter 11 case to a case under chapter 7 of the Bankruptcy Code;

  (e) the appointment in the chapter 11 case of a trustee or an examiner with expanded powers;

  (f) the entry of any order of this Court that avoids or disallows in any way the security interests, liens, priority claims, or rights granted to Cambridge under the terms of this Interim Order; or

  (g) the Debtor fails to provide any additional adequate protection ordered by this Court and such failure shall continue unremedied for more than three (3) business days after written notice thereof.

Upon the occurrence of the Termination Date, the Debtor shall be entitled to seek expedited or emergency hearing (as applicable) before this Court, subject to this Court's availability, to seek continued use of Cash Collateral, on notice to the following parties by email: (i) counsel for Cambridge; (ii) counsel for a committee, if any; and (iii) the U.S. Trustee.

  9. The failure or delay of Cambridge to seek relief or otherwise exercise any of its rights and remedies under this Interim Order, the prepetition loan agreement, the other prepetition loan documents entered into between the Debtor and Cambridge, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by Cambridge.

  10. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to Cambridge hereunder is insufficient to compensate for any diminution in value of Cambridge's interests in its collateral during the chapter 11 case. Except as otherwise provided by the terms of this Interim Order, nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by

Cambridge, that the adequate protection granted herein does in fact adequately protect Cambridge against any diminution in value of its interests in its collateral.

11. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, of Cambridge's rights to seek any other relief in respect of the Debtor (including, without limitation, the right to seek additional adequate protection).

12. A final hearing on the Motion shall take place before this Court on **January 22, 2026, at 1:30 p.m.**

13. The Debtor shall file and serve a proposed Final Order and revised Budget, if applicable, **on or before January 15, 2026**.

14. Objections, if any, to the relief requested in the Motion being granted on a final basis shall be filed with this Court and served upon proposed counsel for the Debtor, on all parties appearing in the cases, any committee, and the Office of the United States Trustee, **on or before January 20, 2026**.

15. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective immediately.

Date: December 23, 2025

/s/ Peter G. Cary
Peter G. Cary
United States Bankruptcy Judge
District of Maine

**Exhibit A**
**Budget**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Week Beginning | 22-Dec-25 | 29-Dec-25 | 05-Jan-26 | 12-Jan-26 | 19-Jan-26 | 26-Jan-26 | 02-Feb-26 | 09-Feb-26 | 16-Feb-26 | 23-Feb-26 | 02-Mar-26 | 09-Mar-26 | 16-Mar-26 | 23-Mar-26 |
| Week Ending | 28-Dec-25 | 04-Jan-26 | 11-Jan-26 | 18-Jan-26 | 25-Jan-26 | 01-Feb-26 | 08-Feb-26 | 15-Feb-26 | 22-Feb-26 | 01-Mar-26 | 08-Mar-26 | 15-Mar-26 | 22-Mar-26 | 29-Mar-26 |
| **Beginning Cash** | 0 | 654,924 | 908,781 | 1,021,161 | 986,533 | 855,816 | 834,342 | 805,156 | 633,858 | 697,561 | 721,213 | 700,889 | 690,127 | 646,615 |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Sales Receipts | 771,976 | 506,314 | 425,046 | 425,046 | 425,046 | 425,046 | 431,445 | 432,512 | 432,512 | 432,512 | 445,164 | 447,273 | 447,273 | 447,273 |
| Sales Tax Collected | 43,848 | 39,943 | 30,178 | 30,178 | 30,178 | 30,178 | 30,633 | 30,708 | 30,708 | 30,708 | 31,607 | 31,756 | 31,756 | 31,756 |
| Other Cash | | | | | | | | | | | | | | |
| **Total Cash Receipts** | 815,824 | 546,257 | 455,224 | 455,224 | 455,224 | 455,224 | 462,078 | 463,220 | 463,220 | 463,220 | 476,771 | 479,029 | 479,029 | 479,029 |
| **Expenses** | | | | | | | | | | | | | | |
| Payroll | 122,500 | 130,000 | 122,500 | 122,500 | 122,500 | 122,500 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| Board Fees | | | | | 3,500 | | | | 3,500 | | | | 3,500 | |
| Health/ Benefit Insurance | | 46,000 | | 3,000 | | | 46,000 | | 3,000 | | 46,000 | | 3,000 | |
| Sales Tax | | | | 130,307 | 77,397 | 118,370 | | | 60,800 | 82,350 | | | 56,550 | 81,600 |
| Leases | | | 16,300 | | | | 68,000 | 141,300 | | | 68,000 | 141,300 | | |
| Business Insurance | | 13,000 | | | | | 13,000 | | | | 13,000 | | | |
| Utilities Expenses | | | | | 37,500 | | | 37,500 | | | | | 37,500 | |
| Store Supplies | | | | | 19,000 | | | 19,000 | | | | | 19,000 | |
| Freight | | | | | 35,000 | | | 35,000 | | | | | 35,000 | |
| Repair & Maintenance | | | | | 11,000 | | | 11,000 | | | | | 11,000 | |
| Travel | | | | | 5,000 | | | 5,000 | | | | | 5,000 | |
| Software / IT Services / Subscriptions | | | | | 28,500 | | | 28,500 | | | | | 28,500 | |
| CC Processing Fees | | 65,000 | | | | | 47,500 | | | | 47,500 | | | |
| Misc Admin | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 |
| Inventory Payments | 15,000 | 15,000 | 180,645 | 180,645 | 180,645 | 180,645 | 183,364 | 183,818 | 183,818 | 183,818 | 189,195 | 190,091 | 190,091 | 190,091 |
| **Total Expenses** | 150,900 | 282,400 | 332,845 | 449,852 | 533,442 | 434,915 | 491,264 | 594,518 | 384,518 | 399,568 | 497,095 | 464,791 | 522,541 | 405,091 |
| **Additional Expenditures** | | | | | | | | | | | | | | |
| Legal & Consultant Fees | | | | 25,000 | | 25,000 | | 25,000 | | 25,000 | | 25,000 | | 25,000 |
| Adequate Utility Assurance | | | | | 37,500 | | | | | | | | | |
| Larrabee Road | 10,000 | 10,000 | 10,000 | 15,000 | 15,000 | 15,000 | | | | | | | | |
| Store Closures | | | | | | | | 15,000 | 15,000 | 15,000 | | | | |
| US Trustee Fee | | | | | | 1,783 | | | | | | | | |
| Critical Vendor Payments | | | | | | | | | | | | | | |
| **Total Additional Expenditures** | 10,000 | 10,000 | 10,000 | 40,000 | 52,500 | 41,783 | - | 40,000 | 15,000 | 40,000 | - | 25,000 | - | 25,000 |
| **Grand Total Expenses** | 160,900 | 292,400 | 342,845 | 489,852 | 585,942 | 476,698 | 491,264 | 634,518 | 399,518 | 439,568 | 497,095 | 489,791 | 522,541 | 430,091 |
| **Ending Cash** | 654,924 | 908,781 | 1,021,161 | 986,533 | 855,816 | 834,342 | 805,156 | 633,858 | 697,561 | 721,213 | 700,889 | 690,127 | 646,615 | 695,553 |
| **Inventory** | | | | | | | | | | | | | | |
| Total Inventory | 5,021,621 | 4,650,633 | 4,412,476 | 4,380,597 | 4,348,719 | 4,316,841 | 4,284,962 | 4,252,604 | 4,220,165 | 4,187,727 | 4,155,289 | 4,121,901 | 4,088,356 | 4,054,810 |
| COGs | 385,988 | 253,157 | 212,523 | 212,523 | 212,523 | 212,523 | 215,723 | 216,256 | 216,256 | 216,256 | 222,582 | 223,637 | 223,637 | 223,637 |
| Purchases / Inventory Received | | | 170,645 | 170,645 | 170,645 | 170,645 | 173,364 | 173,818 | 173,818 | 173,818 | 179,195 | 180,091 | 180,091 | 180,091 |
| Special Order Purchases | 15,000 | 15,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| **Ending Inventory** | 4,650,633 | 4,412,476 | 4,380,597 | 4,348,719 | 4,316,841 | 4,284,962 | 4,252,604 | 4,220,165 | 4,187,727 | 4,155,289 | 4,121,901 | 4,088,356 | 4,054,810 | 4,021,265 |
| **Total Collateral** | 5,305,557 | 5,321,257 | 5,401,758 | 5,335,252 | 5,172,656 | 5,119,304 | 5,057,760 | 4,854,024 | 4,885,288 | 4,876,502 | 4,822,791 | 4,778,483 | 4,701,426 | 4,716,818 |

*Credit card transactions represent 95% of our cash receipts. These deposits are received in our deposit account typically two days after their original sales transaction date. The remaining 5% of our cash receipts are routinely deposited on a daily basis.