UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**ARTSTOCK d/b/a Artist & Craftsman Supply,**<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 25-20305 |

**SECOND INTERIM ORDER: (A) AUTHORIZING THE USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; AND (C) GRANTING RELATED RELIEF**

This matter is before this Court on the *Motion of Debtor for Entry of an Order: (A) Authorizing the Use of Cash Collateral; (B) Granting Adequate Protection; and (C) Granting Related Relief* [Dkt. No. 3] (as supplemented by Dkt. No. 26, the "**Motion**") filed by the Debtor;[2] and with the Motion having previously been granted on an interim basis [Dkt. No. 31]; and due and sufficient notice under the circumstances of the Motion and the hearing on the Motion having been provided by the Debtor; and upon consideration of the Motion, and the record at the hearing; and it appearing that approval of this second interim order (the "**Second Interim Order**") is fair and reasonable and in the best interests of the Debtor, the estate, and parties in interest, and is essential for the continued preservation of the Debtor's assets; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND**:

A.  On the Petition Date, the Debtor commenced its chapter 11 case in the Bankruptcy Court.

---

[1] The last four digits of Artstock's federal taxpayer identification number are 6772, and its principal place of business is 540 Deering Avenue, Portland, Maine.

[2] Capitalized terms used, but not defined in this Order, shall have the meaning ascribed to such terms in the Motion.

1

B. The Debtor is continuing to manage its assets and operate its business as a debtor-in-possession.

C. On January 12, 2026, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**").

D. No request for the appointment of an operating trustee or examiner has been made in this case.

E. The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

F. The Debtor has a need to use Cash Collateral to have adequate liquidity to provide for, among other things, the orderly continuation of its business, to maintain business relationships, and to preserve the value of the Debtor's assets.

G. **SUBJECT IN EACH CASE ONLY TO PARAGRAPH 7 OF THIS SECOND INTERIM ORDER, THE DEBTOR, ON BEHALF OF ITSELF AND ITS ESTATE, STIPULATES AND AGREES TO THE FOLLOWING AS TO CAMBRIDGE SAVINGS BANK ("CAMBRIDGE"):**

    (i) As of the Petition Date, the Debtor was indebted to Cambridge in the amount of $1,346,370 (exclusive of accrued but unpaid interest, attorneys' fees, and other collection costs to the extent set forth in the applicable loan documents), without counterclaim, causes of action, defenses, or offset of any kind, all of which are waived and released by the Debtor and its estate (the "**Cambridge Prepetition Obligations**").

    (ii) As of the Petition Date, the Cambridge Prepetition Obligations were secured by valid, binding, perfected, and non-avoidable first priority liens on all or substantially all of the Debtor's assets, including, without limitation, cash, accounts receivable, and inventory.

    (iii) In consideration of Cambridge's consent to the use of Cash Collateral on the terms set forth herein, the Debtor, on behalf of itself and its estate, hereby waives, releases, and discharges Cambridge and its respective

2

affiliates, successors, agents, and representatives from any and all claims, causes of action, defenses, counterclaims, objections, or rights of setoff of any nature whatsoever, whether known or unknown, whether arising at law or in equity, that the Debtor or its estate has or may have against Cambridge arising prior to the Petition Date related to the Cambridge Prepetition Obligations or the prepetition lending relationship between Cambridge and the Debtor, including, without limitation, any claims relating to the validity, enforceability, priority, perfection, or amount of Cambridge's liens or claims, or the conduct of Cambridge in connection therewith.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**:

1. The Motion is **GRANTED** on a further interim basis as set forth in this Second Interim Order.

2. The Debtor is authorized to use Cash Collateral in accordance with and to the extent set forth in the Budget attached hereto as **Exhibit A**, through and including the Final Hearing (defined below), with recognition and allowance that the timing of revenue and expenses may be different than as projected in the Budget. The Debtor's use of Cash Collateral pursuant to this Second Interim Order shall be limited to 115 percent (115%) of the aggregate expenditures as set forth in the Budget. As reflected in the Budget, during the interim period covered by this Second Interim Order, the Debtor shall make monthly payments to Cambridge Savings Bank ("**Cambridge**") in the amount of monthly interest at the default interest rate under the Cambridge loan documents and a $1,000 collateral monitoring fee.

3. Not later than 5:00 p.m. (Eastern time) on the Friday of each week, the Debtor shall furnish to Cambridge, counsel to Cambridge, and counsel to the Committee a weekly report (the "**Budget Compliance Report**") that sets forth for the prior week and on a cumulative basis since the Petition Date, the actual results for the line items in the Budget. The Budget Compliance Report shall include a report on the Debtor's inventory levels in the applicable reporting week.

4. (a) Cambridge (subject to the Challenge rights set forth in paragraph 7), and (b) to the extent the Prepetition Lienholders[3] are determined to be entitled to adequate protection for the Debtor's use of Cash Collateral, Cambridge and the Prepetition Lienholders (subject to the immediately preceding clause) shall be granted, pursuant to Bankruptcy Code §§ 361, 363(c)(2), and 363(e), solely to the extent of any diminution in the value of Cambridge's and the Prepetition Lienholders' (as applicable) interests in Cash Collateral of the Debtor from and after the Petition Date (such diminution in value after the Petition Date, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of any avoidance actions), which shall exist in the same order of priority that existed as of the Petition Date (the "**Adequate Protection Liens**"). In addition to the Adequate Protection Liens, pursuant to and solely to the extent set forth in § 552 of the Bankruptcy Code, each of Cambridge and the Prepetition Lienholders shall continue to hold liens, rights as assignee, and/or security interests in any and all property of the Debtor only to the same extent and validity, and in the same priority, as Cambridge and the Prepetition Lienholders held liens, rights as assignee, and/or security interests in the Debtor's assets at the Petition Date (the "**Continuing Liens**").

5. The Adequate Protection Liens and Continuing Liens shall be valid, binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, financing statements, or other agreements.

6. To the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations in their entirety, the remaining, unsatisfied Adequate Protection Obligations shall constitute allowed administrative claims against

---

[3] As used herein, "Prepetition Lienholders" include the Internal Revenue Service and Blick Art Materials, with the Debtor reserving all rights regarding such claims and interests (including, without limitation, as to validity, priority, and perfection of liens), and including as to whether such parties are entitled to adequate protection.

4

the Debtor to the extent provided by § 507(b) of the Bankruptcy Code.

       7.    (a) Subject to Paragraph 7(b) hereof, each stipulation, admission, and agreement contained in Paragraph G of this Second Interim Order (the "**Debtor's Stipulations**"), shall be binding upon the Debtor, its Estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and (subject to Paragraph 7(b) hereof) the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

       (b)    Nothing in this Second Interim Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, to seek, solely in accordance with the provisions of this Paragraph 7, to assert claims against Cambridge, on behalf of the Debtor or the Debtor's creditors or to otherwise challenge the Debtor's Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the security interests, and liens of Cambridge, (ii) the validity, allowance, priority, or amount of the Cambridge Prepetition Obligations, or (iii) any liability of Cambridge with respect to anything arising from the prepetition loan documents. Notwithstanding the immediately preceding sentence, any Committee or any other party in interest must, after obtaining standing approved by the Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against Cambridge (each, a "**Challenge**") no later than (i) with respect to any Committee, the date that is sixty (60) days after entry of this Second Interim Order, (ii) with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of this Second Interim Order, or (iii) with respect to a chapter 11 trustee appointed in the Chapter 11 Case, or any chapter 7 trustee appointed in a

5

successor case, prior to the expiration of the periods set forth in subsections (i) and (ii) above, no later than the date that is the later of (A) fourteen (14) days, or such other time as determined by the Court after motion and hearing, after the appointment of such trustee or (B) the expiration of the time periods set forth in the foregoing subsections (i) and (ii) above (collectively, the "**Challenge Period**").

(c) The Challenge Period may only be extended (i) with the written consent of Cambridge prior to the expiration of the Challenge Period, and for the avoidance of doubt, any such extension shall only apply to the specific party as to whom such extension may be granted or (ii) by further order of the Court after motion and hearing on proper notice to Cambridge; provided, that the filing of a motion seeking standing to file a Challenge before the end of the Challenge Period (a "**Standing Motion**"), which attaches a proposed Challenge action, shall extend the Challenge Period with respect to that party only until two (2) business days after the Court approves the Standing Motion, or such other time period ordered by the Court in approving the Standing Motion.

(d) Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated in favor of Cambridge, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtor's Chapter 11 Case, or a chapter 7 trustee, any examiner or any other estate representative appointed in a successor case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtor's Stipulations,

6

Document    Page 7 of 12

waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the claims, liens, and interests of Cambridge shall be of full force and effect and forever binding upon the Debtor's Estate and all creditors, interest holders, and other parties in interest in the Chapter case and any successor case, and (3) any and all claims or causes of action against Cambridge relating in any way to Cambridge's prepetition loan documents, the Cambridge Prepetition Obligations, and Cambridge's prepetition liens and security interests, shall be released by the Debtor's Estate, all creditors, interest holders, and other parties in interest in the Chapter 11 case and any successor case.

    (e) Nothing in this Second Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or its Estate, including, without limitation, any Challenge with respect to the prepetition loan documents, the Cambridge Prepetition Obligations, and/or Cambridge's prepetition liens.

    8. The terms and conditions of this Second Interim Order shall be effective and immediately enforceable upon its entry on the docket notwithstanding any potential application of Bankruptcy Rules 6004, 7062, 9014, or otherwise.

    9. Immediately upon written notice sent by email from Cambridge to counsel to the Debtor, the U.S. Trustee, and counsel to the Committee, the Debtor's authorization under this Second Interim Order, and the consent of Cambridge for the Debtor to use Cash Collateral pursuant to this Second Interim Order, shall terminate upon the earliest to occur of the following (the date of such written notice, the "**Termination Date**"):

    (a) the entry of an order of this Court terminating the right of the Debtor to use Cash Collateral;

(b) an order of this Court is entered reversing, staying, vacating or otherwise modifying this Second Interim Order or any provision contained herein without the prior written consent of Cambridge;

(c) the Debtor spends in contravention of the Budget, after accounting for allowable variances, without, in each instance, the prior written consent of Cambridge and without having consulted with the Committee;

(d) the dismissal of the chapter 11 case, or the conversion of the chapter 11 case to a case under chapter 7 of the Bankruptcy Code;

(e) the appointment in the chapter 11 case of a trustee or an examiner with expanded powers;

(f) the entry of any order of this Court that avoids or disallows in any way the security interests, liens, priority claims, or rights granted to Cambridge under the terms of this Second Interim Order; or

(g) the Debtor fails to provide any additional adequate protection ordered by this Court and such failure shall continue unremedied for more than three (3) business days after written notice thereof.

Upon the occurrence of the Termination Date, the Debtor shall be entitled to seek expedited or emergency hearing (as applicable) before this Court, subject to this Court's availability, to seek continued use of Cash Collateral, on notice to the following parties by email: (i) counsel for Cambridge; (ii) counsel to the Committee; and (iii) the U.S. Trustee.

10. The failure or delay of Cambridge to seek relief or otherwise exercise any of its rights and remedies under this Second Interim Order, the prepetition loan agreement, the other prepetition loan documents entered into between the Debtor and Cambridge, or applicable

law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by Cambridge.

11. Nothing herein shall impair or modify (a) the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to Cambridge hereunder is insufficient to compensate for any diminution in value of Cambridge's interests in its collateral during the chapter 11 case or (b) the right of the Committee or any other party in interest to oppose any request by Cambridge for additional adequate protection. Except as otherwise provided by the terms of this Second Interim Order, nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by Cambridge, that the adequate protection granted herein does in fact adequately protect Cambridge against any diminution in value of its interests in its collateral.

12. Notwithstanding anything herein to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, (a) Cambridge's rights to seek any other relief in respect of the Debtor (including, without limitation, the right to seek additional adequate protection) or (b) the Committee's rights to oppose any such relief requested.

13. A final hearing on the Motion shall take place before this Court on **March 3, 2026, at 9:00 a.m.** (the "**Final Hearing**").

14. The Debtor shall file and serve a proposed Final Order and revised Budget **on or before February 17, 2026**.

15. Objections, if any, to the relief requested in the Motion being granted on a final basis shall be filed with this Court and served upon proposed counsel for the Debtor, on all parties appearing in the cases, the Committee, and the Office of the United States Trustee, **on or before February 24, 2026**.

16. This Second Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective immediately.

Dated: January 22, 2026  /s/ Peter G. Cary
United States Bankruptcy Judge
District of Maine

**Exhibit A**
**Budget**



| | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|
| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Week Beginning | 19-Jan-26 | 26-Jan-26 | 02-Feb-26 | 09-Feb-26 | 16-Feb-26 | 23-Feb-26 | 02-Mar-26 |
| Week Ending | 25-Jan-26 | 01-Feb-26 | 08-Feb-26 | 15-Feb-26 | 22-Feb-26 | 01-Mar-26 | 08-Mar-26 |
| **Beginning Cash** | 1,782,079 | 1,573,853 | 1,213,345 | 1,056,448 | 998,191 | 982,949 | 936,057 |
| **Cash Receipts** | | | | | | | |
| Sales Receipts | 444,214 | 458,257 | 452,512 | 442,512 | 408,661 | 411,041 | 425,328 |
| Sales Tax Collected | 31,539 | 32,536 | 32,128 | 31,418 | 29,015 | 29,184 | 30,198 |
| Other Cash | | | | | | | |
| **Total Cash Receipts** | 475,753 | 490,793 | 484,640 | 473,930 | 437,676 | 440,225 | 455,526 |
| **Expenses** | | | | | | | |
| Payroll | 122,500 | 122,500 | 122,500 | 120,000 | 120,000 | 120,000 | 120,000 |
| Board Fees | 3,500 | | | | 3,500 | | |
| Health/ Benefit Insurance | | | 55,000 | | 4,000 | | 55,000 |
| Sales Tax | 207,704 | 118,370 | | | 71,780 | 107,671 | |
| Leases | | | 68,000 | 141,300 | | | 68,000 |
| Business Insurance | 3,903 | | 13,733 | | | | 14,000 |
| Utilities Expenses | | 37,500 | | | | | |
| Store Supplies | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Freight | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Repair & Maintenance | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Travel | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 |
| Software / IT Services / Subscriptions | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| CC Processing Fees | | | 57,475 | | | | 44,075 |
| Misc Admin | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 |
| Interest CSB | | | 16,000 | | | | 16,000 |
| LOC Monitor Fee | | | 1,000 | | | | 1,000 |
| Inventory Payments | 231,439 | 497,281 | 212,179 | 195,237 | 202,987 | 183,796 | 180,764 |
| **Total Expenses** | 604,696 | 811,301 | 581,537 | 492,187 | 437,917 | 447,117 | 534,490 |
| **Additional Expenditures** | | | | | | | |
| Debtor's Legal Fees | 25,000 | 25,000 | 25,000 | 25,000 | | 25,000 | |
| Creditor Committee Legal Fees | | | 20,000 | | | | 20,000 |
| Adequate Utility Assurance | 37,500 | | | | | | |
| Larrabee Road | 15,000 | 15,000 | 15,000 | | | | |
| Store Closures | | | | 15,000 | 15,000 | 15,000 | |
| US Trustee Fee | 1,783 | | | | | | |
| Critical Vendor Payments | | | | | | | |
| **Total Additional Expenditures** | 79,283 | 40,000 | 60,000 | 40,000 | 15,000 | 40,000 | 20,000 |
| **Grand Total Expenses** | 683,979 | 851,301 | 641,537 | 532,187 | 452,917 | 487,117 | 554,490 |
| **Ending Cash** | 1,573,853 | 1,213,345 | 1,056,448 | 998,191 | 982,949 | 936,057 | 837,094 |
| **Inventory** | | | | | | | |
| Total Inventory | 4,345,442 | 4,345,442 | 4,525,442 | 4,491,504 | 4,458,315 | 4,427,666 | 4,396,838 |
| COGs | 222,107 | 229,128 | 226,256 | 221,256 | 204,330 | 205,521 | 212,664 |
| Purchases / Inv Rcvd / Adjustments | 212,107 | 399,128 | 182,317 | 178,067 | 163,681 | 164,693 | 170,764 |
| Special Order Purchases | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| **Ending Inventory** | 4,345,442 | 4,525,442 | 4,491,504 | 4,458,315 | 4,427,666 | 4,396,838 | 4,364,938 |
| **Total Collateral** | 5,919,295 | 5,738,787 | 5,547,951 | 5,456,506 | 5,410,614 | 5,332,895 | 5,202,032 |